W. C. GORHAM AND W. B. TAYLOR v. SOUTHERN RAILWAY COMPANY.

(Filed 10 April, 1912.)

1. **Condemnation—Easements—Cartways—Situation of Lands—Proposed Buildings—Evidence.**

   In proceedings to lay out a cartway over the lands of another whereon there is a right of way of a railroad company, it is competent for the petitioner to show at the trial the exact situation of his lands, the uses to which they were susceptible, and hence, in this case, evidence was properly admitted which tended to show that the petitioner intended to erect a dwelling on his lands east of the railroad, from whence there was no proper outlet; its location; that the timber to be used for the purpose was to be cut from the west side of the railroad, and its location, and the distance between the timber and the proposed dwelling by the crossing in use at the time of filing the petition, and by the proposed new cartway.

2. **Objections and Exceptions—When Taken—Practice.**

   The evidence in this case objected to *Held* to have been without prejudice, as it had theretofore been testified to, in substance, without objection.

3. **Condemnation — Easements—Cartways—Board of Supervisors—Order—Evidence—Corroboration—Harmless Error.**

   At the trial in the Superior Court, on appeal from an order of the board of supervisors allowing a cartway to be established over the lands of another, the order of the board is properly admitted in evidence to show the jury the location of the cartway, and in corroboration of the supervisors who have testified; and

*Held,* further, the fact that the order had been made would necessarily imply that the cartway located was necessary, just, and reasonable, and its introduction would, in any event, be without prejudice to the respondent.

4. **Condemnation — Easements—Cartways—Former Requests—Different Locations—Evidence.**

Evidence that a petitioner for a cartway over the lands of another had theretofore requested a cartway at a different location to the one laid off, which was not objected to by the respondent, is incompetent, as it would not be an aid to the jury in determining the matter and would not be a bar to the proceedings.

5. **Objections and Exceptions—Questions and Answers—Materiality —Appeal and Error.**

An objection to the exclusion of a question asked a witness must show that the answer would have been material and competent, to constitute reversible error on appeal.

6. **Condemnation — Easements—Cartways—Permissive Ways—Evidence—Interpretation of Statutes.**

Under the language and spirit of Revisal, sec. 2686, a petitioner for a cartway over the lands of another becomes entitled thereto by showing that there is no public road leading to his lands; that the proposed cartway is necessary, reasonable, and just; and the existence of a permissive way is evidence for the consideration of the jury, but not fatal to his demand. *Ford v. Manning,* 152 N. C., 151, cited and approved.

7. **Condemnation — Easements — Cartways — Railroad Crossings— Danger—Questions for Jury.**

The mere fact of danger of crossing a railroad right of way will not bar the rights of a petitioner for a cartway across one, the danger of crossing at the proposed location being for the consideration of the jury.

APPEAL from *O. H. Allen, J.,* at November Term, 1911, of GRANVILLE.

The petitioners filed their petition in November, 1910, before the Board of Supervisors of Salem Township, Granville County, asking that a cartway be established from the land on which they lived, across the track and right of way of the defendant, to a public road. Notice was issued to the defendant, and on 28 November, 1910, said supervisors made the following order:

"This cause coming on to be heard before the undersigned Road Supervisors of Salem Township, Granville County, upon the petition of W. R. Taylor and W. C. Gorham, after due notice to the Southern Railway Company and Mrs. Wright, both parties being represented by counsel, after hearing the statements and contentions of both petitioners and the Southern Railway Company, we went upon the lands desired as cartway and made personal inspection of the same, and we find that it would be necessary, reasonable, and just that the petitioners be allowed a cartway from the dwelling-house of said W. C. Gorham and W. R. Taylor over the lands of said W. R. Taylor, Mrs. E. L. Wright, and the Southern Railway right of way and railroad track to the public road leading from Oxford to Stovall, and that said cartway be laid off and kept open as laid off by said Gorham, except that it should cross the railroad on the south side of the second telegraph pole from the crossing described in the plat hereto attached. Said Gorham is to cut two feet off face side of cut in railroad up to level between the telegraph pole at crossing asked for and the one hereby established, if the railroad agrees to it.

"And it is ordered that said cartway be laid off and kept open across said lands of the parties in accordance with the laws of North Carolina.

"And for want of a constable in said township, the Sheriff of Granville County is hereby ordered to summon a jury of five freeholders to view the premises and lay off the cartway hereinbefore granted to width of fourteen feet, and assess any damages the owner of said land may sustain thereby, and the cartway herein allowed shall be marked and staked out in accordance with the findings above set out. And said cartway shall be kept open according to law."

The defendant appealed from the order to the Board of Commissioners of Granville County, which affirmed the order of the supervisors, and the defendant then appealed to the Superior Court, where the following verdict was returned by the jury:

1. Are the plaintiffs settled upon the land to which no public road is leading? Answer: Yes.

2. Is the proposed cartway necessary, reasonable, and just? Answer: Yes.

On the trial it appeared that the plaintiffs were the owners of about 300 acres of land in Salem Township, and that the track and right of way of the defendant ran through this tract of land, leaving about 280 acres, on which the home of the plaintiffs was situated, on the east side, and about 20 acres on the west side.

It also appeared that there was a public road on the land on the west of the railroad, running parallel with it, and the cartway proposed was to run from the land on the east side of the railroad to said public road.

It further appeared that at the time of filing the petition a grade crossing was maintained across said railroad and right of way over which the plaintiffs could pass on their own land, except possibly a short distance on the Booth land, to said public road, but that this was permissive and not of right.

One of the petitioners testified as follows: That Lewis station was not more than one mile from the dwelling of the plaintiff witness, but in order to reach it he had to go over 800 yards toward Oxford, and then 840 yards back along the public road until he reached a point opposite his house, on the railroad, which was 345 yards from his dwelling, where he asked that the cartway cross the railroad; that he wished to haul his heavy freight, such as fertilizers, farm machinery, lumber, and other things, from Lewis station; that the crossing at that place was necessary to enable him to reach the cultivated land west of the railroad more conveniently; that he was preparing to build a dwelling near the tenant-house in which he was living; that a sawmill had been established just east of that place, and a very considerable portion of the timber he expected to use was on the west side of the railroad and the public road, which he would have to haul across the proposed crossing; that there was a grade crossing 800 yards southwest of his present dwelling, which was in use when he went to live there; that between said crossing and the public road there was a narrow point of the Booth land, and plaintiff's land comes up to the crossing on the east side, and the roadway thereto on east is on plaintiff's land.

Witness was asked where he proposed to erect the new dwelling of which he had spoken.

(Defendant objected; objection overruled.)

Witness then testified that he intended to erect the dwelling between present house and the railroad.

Witness was asked where the timber was on the west side, of which he had spoken, which he intended to cut and haul for his new dwelling.

(Defendant objected; overruled; exception.)

Witness stated that it was on the northwest part of the land, and it would be much shorter to haul it by the proposed crossing than to go 840 yards to the present crossing and then more than 800 yards to the new mill.

(Defendant objected; overruled; exception.)

Witness testified that there were signs of an old road along the proposed cartway and crossing of the railroad.

On cross-examination witness testified that his present house fronted south toward the present crossing, 800 yards distant, in sight of the house; that said crossing was a grade crossing used by him and others who lived east of his house without objection from the defendant; that his house was on about the highest part of the farm. Defendant then asked witness if a grade crossing could not be obtained at almost any point along said railroad for a distance of nearly 400 yards north of the present crossing. Witness replied that a grade crossing could be obtained at several places, but that it would require him to go a much farther distance to reach his dwelling on account of a very great depression, or ravine, between the east side of the railroad, which drained out toward the north (but being easily crossed at a bridge on the proposed cartway). Witness was asked if there was not another way to reach Lewis station, by going out northeast back of his dwelling. Witness replied there was an old road on his land and that of another person by which he could reach Lewis station, but it was very rough and somewhat longer than the proposed cartway.

The order of the supervisors was introduced, and the defendant excepted.

Each of the supervisors was examined as a witness, and testified that he went on the land and examined it; he described the conditions existing and stated his reasons for making the order.

The cartway was not established by the supervisors at the place requested by the petitioners, but the defendant offered evidence that the proposed location was dangerous.

One of the witnesses for the defendant was asked if the petitioners had asked for a crossing at any other place than the one mentioned in the petition, and if any objection had been made on the part of the defendant to granting a crossing at any point south of the said cut.

(Objection by petitioner; objection sustained; defendant excepted.)

The defendant requested that the jury be instructed as follows:

1. If you find that plaintiff owns the land on both sides of defendant company's railbed and has been using a crossing from east to west to and from a public road which runs through the land on the western side of the defendant company's right of way, and that plaintiffs still have the right to use the said crossing on their land over said roadbed of defendant, then I charge you that the plaintiffs would not be entitled to the cartway asked for.

2. If the petitioners own the land on both sides of the railroad, and now have an unobstructed way to get from the east side to the road on the west side over their own lands, or the lands of another, then they would not be entitled to the cartway asked for.

3. If you find that petitioners have a way to the station and public road at Lewis', other than the one on the east side, then they would not be entitled to the cartway asked for.

4. If the crossing asked for is at such a place as to make it dangerous for passengers or to the passers over said track, the same would not be reasonable, necessary, and just.

5. If petitioners can have a grade crossing at another place along said track at a place where it would be safe for passengers and travelers wishing to cross the same, the same would not be reasonable, necessary, and just.

Judgment was rendered in accordance with the verdict, and the defendant appealed.

*Graham & Devin for plaintiff.*
*Hicks & Stem for defendant.*

ALLEN, J. The exceptions from 2 to 6, inclusive, present the same question, and are directed to evidence introduced by the petitioners to prove that they intended to erect a dwelling on the land east of the railroad; where it was to be located; that the timber they would cut for the dwelling was on the west side of the railroad, and its location; and the distance between the timber and the dwelling, by the crossing in use at the time of filing the petition, and by the proposed new cartway.

In our opinion, this evidence was competent, for the purpose of showing the jurors the exact situation of the plaintiffs and giving them a true concept of the land and the uses of which it was susceptible; and these were circumstances proper to be considered in the determination of the issue as to whether the proposed cartway was necessary, reasonable, and just.

If this is not true, the defendant has not been prejudiced by the evidence, because it appears that the witness had, without objection, testified to the same facts, in substance.

The order of the board of supervisors was properly admitted in evidence. It was necessary for the jury to understand where the proposed cartway was to be located, and as each of the supervisors testified as a witness, it was also competent in corroboration. Besides this, the statement in the order that the cartway is necessary, reasonable, and just, to which objection is principally urged, would be implied from the making of the order, and the jury already knew that the order had been made.

We do not see the relevancy of the question asked a witness for the defendant for the purpose of showing that the petitioners had requested that another crossing be located, and that the defendant made no objection, as the answer to the question, if in the affirmative, would not aid the jury in determining the issue submitted, and it cannot be claimed that such a request would be a bar to this proceeding; and, further, it does not appear from the record what would have been the answer of the witness. *Stout v. Turnpike Co.,* 157 N. C., 366.

The first, second, and third requests for special instructions present the. question whether the existence of a private way, the use of which is permissive, will prevent the location of a cartway by petition, under the provisions of the Revisal, and the defendant relies on *Lea v. Johnson,* 31 N. C., 19, which has been followed in several cases.

The case of *Lea v. Johnson* was decided in 1848, when the Revised Statutes were in force, which provided, in section 33, ch. 104: "If any person shall be settled upon or cultivating any land to which there is no public road leading and no way to get to and from the same, other than by crossing other persons' lands, and it shall not be necessary to establish a public road, it shall be lawful for such person to file his petition in the county court, praying for a cartway or wagon way, to be kept open across another person's land, leading to some public road, ferry, bridge, or public landing." And by reference to the Revisal of 1905, sec. 2686, it will be observed that the important and material words in the Revised Statutes, "and no way to get to and from the same," are omitted in the statutes now in force.

*Justice Hoke* adverted to the tendency of the early decisions. to construe the statute strictly, in *Ford v. Manning,* 152 N. C., 151, and said: "And while many of the decisions are to the effect that 'these statutes, being in derogation of common right, should be strictly construed, and the petitioner required to bring himself clearly within the meaning of their terms, there is doubt if some of the cases have not gone too far in applying this principle of construction, and if it is not a more wholesome rule to construe the statute in a way to promote its principal and beneficent purpose."

Following this view, we are of opinion that the petitioners have brought themselves within the language and spirit of the statute by showing that there is no public road leading to their lands, and by offering evidence that the proposed cartway is necessary, reasonable, and just, and that the existence of the permissive way is not fatal to their demand.

Nor do we think the defendant was entitled to have the fourth and fifth prayers for instruction given.

It has been said frequently that a railroad track is notice of danger, and the traveler is required to look and listen before

crossing it, because it is understood that there is danger, and if we were to hold that a cartway could not be granted. across the right of way and track of a railroad because dangerous, we would, in effect, forbid it in any case.

His Honor properly charged the jury that they must consider the existence of the permissive way, and the danger of the crossing as it was proposed to locate it, in determining whether it was necessary, reasonable, and just, which we think was fair to the defendant.

Upon a review of the whole record, we find

No error.